IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND,** *et al.*, | * <br> * <br> * |
| Plaintiffs, | *    Case No.: GJH-15-521 |
| v. | * |
| **KIMBERLY HARVEY,** *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pursuant to Fed. R. Civ. P. 55(b), Trustees of the National Automatic Sprinkler Industry Welfare Fund, Trustees of the National Automatic Sprinkler Local 669 UA Education Fund, Trustees of the National Automatic Sprinkler Industry Pension Fund, Trustees of the Sprinkler Industry Supplemental Pension Fund, and Trustees of the International Training Fund (collectively, "Plaintiffs" or "NASI Funds"), have filed a motion for default judgment, with supporting declarations and exhibits, as to Defendants Kimberly Harvey, Gregory Harvey,[1] and All Valley Fire Protection (collectively, "Defendants"). *See* ECF No. 10.[2] The Court deems a hearing unnecessary, *see* Loc. R. 105.6 (D. Md.), and for the reasons that follow, grants Plaintiffs' Motion.

---

[1] The Complaint names Defendants Kimberly Harvey and Gregory Harvey both as individuals and as individuals "doing business as All Valley Fire Protection." ECF No. 1 at 1–2.

[2] In response to the Court's December 18, 2015 letter order, ECF No. 12, and January 7, 2016 paperless order, ECF No. 16, Plaintiffs filed supplemental declarations and exhibits in support of their Motion for Default Judgment, ECF Nos. 15 &17, which the Court considers in conjunction with Plaintiffs' Motion.

**I.      BACKGROUND**

Plaintiffs NASI Funds are "employee benefit plans" as that term is defined in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3). ECF No. 1 at ¶ 1. The NASI Funds are established and maintained according to provisions of the Restated Agreements and Declarations of Trust ("Restated Agreements") and the collective bargaining agreements between the Sprinkler Fitters Local Union Nos. 669 and 483 and Defendants. *Id.*; *see also, e.g.*, ECF Nos. 10-7 & 17-1. Defendants are contractors or subcontractors in the sprinkler industry. ECF No. 1 at ¶¶ 2–6.

Plaintiffs allege that Defendants entered collective bargaining agreements requiring that they submit reports and pay contributions to the NASI Funds for each hour of work by employees performing installation of automatic sprinkler systems. *See* ECF No. 1 at ¶ 11; ECF No. 10-5 at ¶¶ 2–5. Under the terms of the Restated Agreements, when an employer fails to submit the required contributions and file the properly completed report forms, the NASI Funds are permitted to determine the amount of the employer's delinquency using the following formula:

> [T]he amount of the delinquency [is] the greater of (a) the average of the monthly payments or reports submitted by the Employer for the last three (3) months for which payments or reports were submitted, or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted . . . .

ECF No. 10-5 at ¶ 13; *see also* ECF No. 17-1 at 26. The trust agreements further provide that an employer who fails to timely pay required contributions under the collective bargaining agreement is obligated to pay liquidated damages pursuant to the following calculations:

> (1) If payment is not received . . . by the 15th of the month, 10% of the amount [owed] is assessed.
> (2) An additional 5% is added if payment is not received . . . by the last working day of the month in which payment was due.

2

> (3) An additional 5% is added if payment is not received by the 15th of the month following the month in which payment was due.

ECF No. 10-5 at ¶ 17.

Defendants experienced difficulty making the required benefit contributions, and, in response to these difficulties, the NASI Funds and Defendants entered a settlement agreement and promissory note allowing Defendants to make systematic payment over time of all amounts owed to the NASI Funds. ECF No. 1 at ¶ 11; ECF No. 10-5 at ¶ 8. The principal amount owed pursuant to the settlement agreement was $257,978.32, and liquidated damages had accrued to $62,899.42. *See* ECF No. 10-5 at ¶ 8; ECF No. 15-1 at ¶¶ 8–9; ECF No. 15-3 at 1–2. Under the terms of the settlement, Defendants were permitted to pay the principal amount in monthly installments over thirty six months. Liquidated damages were waived, contingent upon Defendants remaining current on their payments under the settlement agreement and in all future monthly contributions owed during the duration of the settlement. ECF No. 10-5 at ¶ 8; ECF No. 15-1 at ¶¶ 8–9; ECF No. 15-3 at 2.

After the Parties executed the settlement agreement, Defendants provided additional information regarding the amounts they owed, causing the NASI Funds to agree to reduce the principal amount of the settlement to $255,034.71 and reduce the liquidated damages calculation to $53,481.75. ECF No. 15-1 at ¶ 10.

Plaintiffs commenced this action on February 24, 2015, alleging that Defendants had defaulted on the terms of the settlement agreement by failing to pay contributions to the NASI Funds for the months of November 2014 through January 2015 and by failing to remain current in its monthly settlement payments.[3] ECF No. 1 at ¶ 12; *see also* ECF No. 10-5 at ¶ 9. In the

---

[3] Subsequent to Plaintiffs' initiation of the instant action, Defendants submitted the required reports and contributions for the month of November 2014, and submitted the required report for December 2014, but failed to

Complaint, Plaintiffs sought to recover $203,405.80 owed under the settlement agreement; $11,579.61 in additional contributions owed for the months of November 2014 through January 2015; $12,572.30 in liquidated damages; and "costs, interest, and reasonable attorneys' fees assessed pursuant to 29 U.S.C. § 1132(g) . . ." and the trust agreements. ECF No. 1 at ¶¶ A–D. Plaintiffs also sought to recover "all contributions and liquidated damages which become due subsequent to the filing of this action through the date of judgment, plus costs, interest, and reasonable attorneys' fees . . . ." *Id.* at ¶ E.

Each Defendant was served on March 9, 2015. ECF Nos. 4–8. When Defendants failed to respond within the requisite time period, Plaintiffs filed a motion for entry of default, ECF No. 9, and the pending motion for default judgment, ECF No. 10. Defendants failed to respond, and the clerk entered default on July 31, 2015. ECF No. 11.

## II. STANDARD OF REVIEW

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment: rather, that decision is left to the discretion of the court." *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328 at * 2 (D. Md. Oct. 25.2011) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *id.* (citing U*nited States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422

---

make the required payment for that month, and any subsequent months through May 2015. *See* ECF No. 10-5 at ¶¶ 10–11; ECF No. 15-1 at ¶ 14.

(D. Md. 2005). Fed. R. Civ. P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In entering default judgment, the court cannot, therefore, award additional damages "because the defendant could not reasonably have expected that his damages would exceed th[e] amount [plead in the complaint]." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics, Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S., Inc.*, No. WDQ–09–3174, 2010 WL 1568595, at *3 (D. Md. Apr.16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

## III.   DISCUSSION

Assuming the truth of the well-pleaded allegations of the complaint, as the Court must upon entry of default judgment, Plaintiffs have established Defendants' liability for breach of the settlement agreement and for failure to make the contributions required under the trust agreements. *See* 29 U.S.C. § 1132(g) (providing that employers who fail to timely make contributions are liable in a civil action for, *inter alia*, unpaid contributions, interest on the unpaid contributions, and reasonable attorneys' fees and costs of the action).

With respect to damages, Plaintiffs now seek an award in the amount of $243,480.26 broken down as follows: $203,405.80 owed as a result of Defendants' default on the terms of the settlement agreement; $22,100.55 in additional contributions owed for the months of December 2014 through May 2015; $14,960.64 in liquidated damages; $710 in costs; $1,680.00 in attorneys' fees; and $623.27 in interest "set at the rate of 12% per annum on paid contributions through the date of payment and assessed on unpaid contributions through June 30, 2015 and continuing to accrue through the date of payment." ECF No. 10; *see also* ECF Nos. 10-1, 10-3, 10-5 & 15-1.

### A. Settlement Payments

Plaintiffs seek $203,405.80 for contributions and reinstated liquidated damages currently owed under the settlement agreement. ECF No 10 at ¶ 1. This request is substantiated in the record through the declarations of John P. Eger, Assistant Fund Administrator of the NASI Funds, ECF No. 10-5, and Michael W. Jacobson, Fund Administrator of the NASI Funds, ECF No. 15-1, and the settlement agreement and promissory note, ECF No. 15-3. Thus, the record supports Plaintiffs' request for $203,405.80 under the settlement agreement.

### B. Unpaid Contributions

In the Complaint, Plaintiffs sought $11,579.61 for contributions due for work performed during the months of November 2014 through January 2015, plus costs, interest, and reasonable attorneys' fees assessed pursuant to 29 U.S.C. § 1132(g), ECF No. 1 at ¶ B, as well as other contributions "which become due subsequent to the filing of this action through the date of judgment . . . ." ECF No. 1 at ¶ D. By the time Plaintiffs filed their Motion for Default Judgment, several months had passed, and, although Defendants had submitted the required contribution for November 2014, they failed to do so for the months of December 2014 through May 2015.

Plaintiffs accordingly now seek $22,100.55 in contributions owed for those months. ECF No. 10 at ¶ 2.

The Court is, of course, limited in the amount of damages it may award in a default judgment by Fed. R. Civ. P. 54(c). Under that rule, the award may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." *Id.* Courts around the country have interpreted the meaning of this provision differently, however. *See In re Genesys*, 204 F.3d at 132 ("[O]ur research reveals that Fed. R. Civ. P. 54(c) and its many state analogues have led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not 'exceed in amount that prayed for in the demand for judgment.'").[4]

In a case from this district, which coincidentally involved many of the same plaintiffs that are involved in this case, the Court concluded that contributions owed by an employer under a collective bargaining agreement that arose after the date the complaint was filed could not be awarded as damages in a default judgment because any such award would "exceed in amount" that demanded in the complaint. *Trs. of Nat. Automatic Sprinkler Indus. Welfare Fund v. United Automatic Sprinklers, Inc.*, No. CIV.A. DKC 2008-2220, 2009 WL 2058178, at *1 (D. Md. July 14, 2009) (declining to award damages not specified in the complaint, notwithstanding that complaint sought damages "which become due subsequent to the filing of this action," where complaint sought contributions for only certain months). That reading of Rule 54(c) finds support in other cases. *See, e.g., Producers Equip. Sales, Inc. v. Thomason*, 808 P.2d 881, 888

---

[4] The United States Court of Appeals for the Fourth Circuit addressed the meaning of the predecessor to Rule 54(c) in two opinions which preceded *In re Genesys*, but neither case resolves the issue presented in the present case. In *Compton v. Alton Steamship Co.*, 608 F.2d 96, 105 (4th Cir. 1979), the court found that a default judgment that far exceeded the dollar amount of damages sought in the complaint was void where the district court awarded additional statutory damages which, based on the facts alleged in the complaint, the plaintiff was not entitled to. And in *Eddins v. Medlar*, 881 F.2d 1069 (4th Cir. 1989), the court held that a default judgment was void where, although a plaintiff sought $25,000 in compensatory damages and $500,000 in punitive damages, the court ultimately awarded $50,000 in compensatory damages and $100,000 in punitive damages. The plaintiff in *Eddins*, however, did not allege in the complaint that he sought any additional damages that might become due after the filing of the action.

(Kan. Ct. App. 1991) (holding that trial court's award of damages in excess of that demanded in complaint was void under state analogue to Rule 54(c), although complaint prayed for "charges [that] continue to accrue," because defendant lacked sufficient notice of excess damages); *see also Thorp Loan & Thrift Co. v. Morse*, 451 N.W.2d 361, 364 (Minn. Ct. App. 1990); *Mahmoud v. Int'l Islamic Trading (IIT), Ltd.*, 572 So. 2d 979, 982 (Fla. Dist. Ct. App. 1990).

Other courts have reached a different conclusion. Notably, in *Ames v. STAT Fire Suppression, Inc.*, 227 F.R.D. 361, 362 (E.D.N.Y. 2005), the court held:

> Although Rule 54(c) limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint, it does not require plaintiff to have demanded a sum certain in order to recover on default. In this case, the rule does not preclude an award of damages that accrued during the pendency of the action because such damages were explicitly requested in the complaint, and sufficiently established by the affidavits submitted by plaintiffs. Defendant was put on notice that plaintiff was seeking such damages when defendant was served with the complaint. That notice was renewed when defendant was served with plaintiff's motion for default judgment, as well as when defendant was served with plaintiffs' supplemental affidavits . . . .

The *Ames* Court's interpretation of Rule 54(c) also finds support in other cases. *See, e.g., Henry v. Sneiders*, 490 F.2d 315, 317 (9th Cir. 1974) (affirming district court's default judgment for $235,338.89 where complaint prayed for $71,243.68 "together with additional amounts not yet fully determined . . . the full amounts of which [p]laintiff will prove at the time of trial"); *Boland v. Yoccabel Const. Co.*, 293 F.R.D. 13, 19 (D.D.C. 2013) ("Because the defendant was made aware that the plaintiffs sought an award in excess of the amount specifically calculated in the complaint, the Court finds it appropriate to award damages in accordance with the amount outlined in the plaintiffs' motion."); *see also Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 610 (7th Cir. 1980); *Tarnoff v. Jones*, 497 P.2d 60, 65 (Az. Ct. App. 1972).

This Court is persuaded by the *Ames* Court's reading of Rule 54(c). It is evident that the purpose of Rule 54(c)'s prohibition on damages that "exceed in amount" or "differ in kind" from

that sought in the complaint is to allow the defendant to be able to "decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2663 (3d ed. 1998). Indeed,

> [i]t would be fundamentally unfair to have the complaint lead [a] defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Id.* Where a complaint demands a specific amount of damages *and* unspecified additional amounts, however, so long as a defendant has notice that additional unspecified damages may be awarded if the case proceeds to judgment, general allegations in the complaint may suffice to support default judgment in an amount that is proven, either by way of exhibits, affidavits, and other documentation in support of a motion for default judgment, or at a hearing. *See generally In re Genesys*, 204 F.3d at 132–33 (citing cases adopting this view before certifying case to the Supreme Court of Hawaii to resolve issue as a matter of state law); *see also Adkins*, 180 F.Supp.2d at 17. This reasoning applies with even greater force where, as in this case, the Complaint specifies the basis of any additional damages.

Here, although Plaintiffs only demanded $11,579.61 for contributions then due at the time they filed the Complaint, they also sought contributions "which become due subsequent to the filing of this action through the date of judgment . . . ." ECF No. 1 at ¶ D. Defendants, accordingly, had notice at the time the Complaint was filed that failure to defend the action could result in a judgment against them in excess of $11,579.61 for contributions owed under the collective bargaining agreements and had notice of what could be included in any additional damages. They also received notice of the specific amounts Plaintiffs sought to recover in default

judgment when they were served with copies of Plaintiffs' Motion for Default Judgment. *See* ECF No. 10-4. The damages sought by Plaintiffs in their Motion for Default Judgment do not "differ in kind" or "exceed in amount" that plead for in the Complaint; rather under the plain language of that provision, the damages Plaintiffs request in their Motion are precisely the damages plead for in the Complaint, notwithstanding that the total amount of those damages has increased since the time this action was initiated.

In support of their request for contributions owed under the collective bargaining agreements, Plaintiffs submit the declarations of Mr. Eger, ECF No. 10-5, and Mr. Jacobson, ECF No. 15-1, as well as a spreadsheet ("Exhibit L") specifying the unpaid contributions due, ECF No. 10-14. The record, therefore, supports their request for $22,100.55.

### C. Liquidated Damages

With respect to Plaintiffs' request for liquidated damages, the Court is again confronted with a request that differs in dollar amount from that demanded in the Complaint. For the reasons previously stated, the Court nevertheless concludes that Plaintiffs' are permitted to recover liquidated damages that have accrued since they initiated the instant action, as the basis of that recovery was specified in the Complaint. *See* ECF No. 1 at ¶ D (seeking "all contributions *and liquidated damages*" which become due subsequent to the filing of this action) (emphasis added). Exhibit L, submitted in support of their request for contributions, also includes the calculated amounts owed in liquidated damages. ECF No. 10-14. The declarations of Mr. Eger and Mr. Jacobson also support Plaintiffs' request. Thus, Plaintiffs are entitled to recover $14,960.64 in liquidated damages owed.

### D. Interest

Plaintiffs seek $623.27 in interest at the rate of 12% per annum assessed on late paid contributions through the date of the payment and on unpaid contributions through June 30, 2015. ECF No. 10 at ¶ 4. The interest is owed pursuant to 29 U.S.C. § 1132(g) and the trust agreements. The figures in Exhibit L correspond with the amount requested in the motion for default judgment and are otherwise supported by the record.

### E. Attorneys' Fees and Costs

In support of their claim for attorneys' fees and costs, Plaintiffs submit the declarations of their attorney, Charles W. Gilligan, ECF Nos. 10-15 & 15-2, a spreadsheet specifying the hourly billing by Gilligan and his paralegal with respect to the instant lawsuit, ECF No. 10-16, and invoices for costs spent on out-of-state process service, ECF No. 10-17. These materials indicate that Gilligan's firm spent thirteen hours on this case on behalf of Plaintiffs, at a rate of $122 per hour for paralegal time and $310 per hour for attorney time. ECF No. 10-15. These rates are well within the local guidelines and are reasonable. *See* Loc. R. App. B (D. Md.). Plaintiffs are therefore awarded $1,680 in attorneys' fees. The record also substantiates the following expenses: $310 for service of process and $400 for filing fees. ECF Nos. 10-15 & 10-17. Thus, Plaintiffs are awarded $710 in costs.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 10, is **GRANTED**. Judgment will be entered in favor of Plaintiffs in the amount of $243,480.26 as follows: $203,405.80 owed as a result of Defendants' default on the terms of the settlement agreement; $22,100.55 in additional contributions owed; $14,960.64 in liquidated damages;

$1,680 in attorneys' fees; $710 in costs; and $623.27 in interest. A separate Order follows.

Dated: January 21, 2016

GEORGE J. HAZEL
United States District Judge